Vincent DeTORE a/k/a Vicky DeTore,

v.

LOCAL # 245 OF the JERSEY CITY PUBLIC EMPLOYEES UNION, Thomas DeCarlo, Joseph Onorato, William G. Spedding, Joseph Spangenberg, Nicholas Palladino, Michael Sylvestri, Maureen McDevitt, James D. Healey, James Iorio, S. F. Ray Marshall, Secretary of United States Department of Labor, The Department of Public Works of the City of Jersey City, Division of Automotive Services of the Department of Public Works of the City of Jersey City, Paul T. Jordan, M.D., Patrick J. McGovern, M.D., Thomas F. X. Smith, and The City of Jersey City, Jointly, Severally and in the Alternative.

Civ. No. 78–1111.

United States District Court,
D. New Jersey.

Feb. 3, 1981.

Ruskin & Hoberman by Daniel Hoberman, Jersey City, N. J., for plaintiff.

Robert J. Del Tufo, U. S. Atty., Newark, N. J., by Ellen Beard, Asst. U. S. Atty., Dept. of Labor, Washington, D. C., for S. F. Ray Marshall, Secretary of the U. S. Dept. of Labor.

Louis P. Caroselli, Jersey City, N. J., by Thomas Fodice, West Orange, N. J., for the City of Jersey City.

## MEMORANDUM

BIUNNO, District Judge.

Following appeal from this court's order dismissing the complaint against the Secretary (treated by the Court of Appeals, 615 F.2d 980 (3rd Cir.) as a grant of summary judgment, and affirmed), and from another order granting summary judgment to the City defendants, the order in lieu of mandate directed that the latter disposition be vacated and that part of the case remanded for further proceedings.

The reason for this was that the order in favor of the City, which it submitted after the ruling in open court, set out no recital of the underlying grounds. No written opinion was filed. This was because the ruling was made from the bench, at the second of two hearings and none of the parties had undertaken to order transcripts. Thus, the Court of Appeals was deprived of the benefit of the hearing record contained in the two transcripts.

Since the basis for the remand is to have this court articulate its reasons for the order granting summary judgment to the City defendants, this memorandum will supplement the transcripts of the two hearings.

The process begins with analysis of the complaint. The First Count invokes jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. It asserts that defendant Local 245 was a labor organization representing employers in an industry affecting commerce within the meaning of that Act, and was the recognized collective bargaining representative of the unit comprising the office staff (including DeTore) of the Department of Public Works of Jersey City. The First Count

continues with allegations that the union breached its duty of fair representation under the Labor Management Relations Act, 29 U.S.C. § 141 et seq., conspired with the "Department" to permit DeTore's discharge to stand, and that any negotiations over DeTore's grievance were spurious and carried on in bad faith.

The City's brief observed that the definitions of an "employer", in 29 U.S.C. § 152(2) expressly excludes "any State or political subdivision thereof." *NLRB v. Natural Gas, etc.*, 402 U.S. 600, at 604, 91 S.Ct. 1746, at 1749, 29 L.Ed.2d 206 (1971) recognizes the Congressional intent to except the labor relations of State and municipal governments, among others.

Plaintiff's responding brief makes no mention of this point, evidently conceding it *sub silentio*. The subject was mentioned briefly at oral argument, when City counsel argued that any claim of that type would be State law claims only under New Jersey's Public Employers Relations Act, N.J. S.A. 34:15A–1 et seq. See Transcript of April 9, 1980, p.21, line 25 to page 23, line 13. The argument in reply, Tr. p.27, line 1 to page 28, line 24 dealt with the alleged collective bargaining agreement and its ability to create property or tenure rights under New Jersey Civil Service Laws and the requirement of *N.J.Const.* 1947, Art. 7 sec. 1, par. 2, directing that:

> "Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive;"

■ There was no assertion, at argument, to challenge the point that municipal labor relations are not within the Labor Management Relations Act.

■ Since the status of the City as a municipal corporation of the State of New Jersey, and the terms of the Local 245 agreement are matters of fact outside the pleadings, the motion as to the First Count is treated as a motion for summary judgment. The court takes judicial notice of the fact that Jersey City is a municipality of the State of New Jersey, Fed.Ev. Rule 201. Several copies of the Local 245 contract with the City are part of the record as an attachment to an affidavit or to sworn answers to interrogatories (which amount to the same thing) and are part of the record before the court. Neither of these items is in any way contradicted.

There being no genuine issue of any material fact on this point, and defendants being entitled to judgment as a matter of law, summary judgment in their favor on the First Count is warranted.

The Second Count purports to assert claims arising under 42 U.S.C. §§ 1983 and 1985(3), with jurisdiction under 28 U.S.C. § 1343. Deprivation of due process of law under the U.S. Constitution is also claimed.

■ The operative allegations in the Second Count are that DeTore was terminated on or about July 10, 1975 "for no other reason than that the plaintiff being [sic] a transexual [sic]," paragraph 15, and that in violation of the 14th and 5th Amendments defendants "refused to permit plaintiff a hearing, although due demand for the same was made, in violation of the plaintiff's rights of due process," paragraph 17.

The moving affidavits of the City defendants establish that plaintiff was discharged for insubordination after written notice and warning of other work-related charges. Both notices, which are part of the record as attachments to plaintiff's own answers to interrogatories, show that for each charge plaintiff was provided an opportunity to respond or provide an explanation in writing. In both instances, plaintiff wrote in and signed a response but neither one addresses the charge made; both are evasive, flippant or arrogant. The action taken on the first was to authorize a written warning, and on the second it was discharge.

It may be that DeTore had his nose out of joint with the May, 1975 appointment of defendant McDevitt to head the clerical unit where DeTore worked; but McDevitt's

sworn answers to interrogatories show that the appointment was in the classified service (i. e., not subject to discharge except for cause) due to having successfully passed the Civil Service examination and having ranked first on the list.

Plaintiff's proofs in opposition to the motion utterly fails to meet any of these facts. They are not denied. Instead, the affidavits, while couched in phrasing that seem to be facts, are actually nothing more than allegations in repetition of the pleadings, or out-and-out conclusions with no facts presented to support them.

On a motion for summary judgment under Rule 56, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine whether there is a genuine issue as to any material fact.

In meeting such a motion, the party addressed must come forth with *facts*. As amended, Rule 56(e) makes it explicit that the adverse party may not rest on his pleadings, whether by allegations or denials, but the response "must set forth *specific facts*" showing that there is a genuine issue for trial (emphasis added). If the party does not so respond, the rule requires that summary judgment, if appropriate, "shall be entered against him."

DeTore did not so respond. Neither the answering affidavits nor DeTore's own sworn answers to interrogatories set forth "specific facts," on this score. Such specific facts as there are tend to show that there is no genuine issue to be tried. The rest is composed of broad charges, conclusions and allegations, more often than not copying operative expressions from reported cases (without quotation or attribution, but easily recognized).

The term "transsexual" seems not to be completely defined. *In re Grossman*, 127 N.J.Super. 13, 316 A.2d 39 (App.1974) suggests that it refers to an individual "who anatomically is born with the genitalia of one sex but who believes himself (or herself) to be a member of the other sex". (at page 19). Grossman evidently had been

diagnosed as a transsexual, and had had "sex-reassignment surgery" performed. That is not the case here by those definitions. As the record at the argument shows, there is no dispute that DeTore was anatomically born a male, and over some period of time has begun a process aimed at "sex-reassignment surgery". The first stage, as described on the record, is the administration of hormones which are capable of altering features commonly known as secondary sex characteristics. In DeTore's case, these would include the physical (but not functional) formation of breasts, reduction, elimination or change of distribution of hair, redistribution of fatty deposits and the like. It also included, the record shows, psychiatric or psychological therapy to enable DeTore to think and act female in addition to appearing and sounding female. He wore female dress. From the initial hiring in 1971, DeTore "was outwardly a female to all intents and purposes" (Transcript, page 16, lines 6–7). The second step, the "sex-reassignment surgery" (which evidently involves a physical, surgical reconstruction of the genitalia, the primary sex characteristics) has not occurred (*Idem.*, p.16, lines 14 to 24). There was no dispute that physically and anatomically, plaintiff is a male; but if the court were to meet the plaintiff, the court would accept that outwardly the plaintiff is female. (*Idem.* p.18, line 19 to p.19, line 17).

While these circumstances are not in dispute as a matter of fact, and were the circumstances throughout the period from 1971 until termination in July, 1975, no fact shown, let alone any specific facts, so much as suggests that they had anything to do with the termination, much less than that they were the only reason for termination, as alleged in par. 15 of the Second Count.

Although the Court of Appeals did not have the benefit of the briefs below, or of the two transcripts of the hearings, it was able to observe that there was no provision in the collective bargaining agreement limiting dismissals or discharges to "just cause." In fact, it was also argued in the brief that the same contract contained a

clause prohibiting discrimination, implying that its reach extended to a transsexual, but the contract clause is limited to discrimination on account of membership and activity in the union and their opposites.

The Court of Appeals was not able to ascertain the basis here for other claims, (a) a denial of equal protection; (b) a deprivation of a liberty interest in future employment; and (c) infringement of a constitutional right to express one's sexual preference.

These claims are not set out in the complaint, except as (c) might be implied from the allegation in paragraph 15 that DeTore was discharged for no other reason than being a transsexual. The responding brief here on the City defendants' motion for summary judgment does contain discussion of this kind of claim, but all of them are beyond the scope of the pleadings, by which the issues are defined. The Second Count rested on paragraph 15, alleging that the dismissal was solely because of DeTore's transsexual characteristics. This was made clear at argument, Tr. of 4/9/79, p.29, lines 11 to 25. The proofs on the motion for summary judgment were that the sole ground for termination was insubordination, not the transsexual characteristic, and that no prospective employers had made any inquiries, and if they did no information was to be released. These facts were not denied. See Tr. of 4/9/79, p. 20, line 15 to p.21, line 9.

Thus, nothing was alleged, no fact was presented, in connection with the three claims that perplexed the Court of Appeals, just as they perplexed this court.

The basis for this court's decision was, as specified by Rule 56, the pleadings, answers to interrogatories and affidavits on file (there were no depositions or requests for admission). With that material, none of the vague and undefined "claims" set out in the briefs here, or argued to the Court of Appeals, was in the case at all or the subject of a proper presentation to the trial court.

The court emphasizes that it was not dealing with a motion to dismiss for failure to state a claim under Rule 12(b)(6), but with a motion for summary judgment under Rule 56. Absent any showing of any genuine issue of material fact to be tried, the court concluded that the City defendants were entitled to summary judgment as a matter of law, and it so ordered. Had the plaintiff-appellant arranged to order the two transcripts of the hearings on the motion, the remand and this articulation may well have been avoided.

As the Court of Appeals noted in footnote 2, the Local Union defendants, as well as Joseph Spangenberg, a city official, were never served with the summons and complaint. Also, defendant Paul T. Jordan was served but had filed no answer at the time the motions were heard. These and other circumstances involve additional questions, dealt with below.

*Motion to enter default against Paul T. Jordan.*

■ Paul T. Jordan was Mayor of Jersey City at the time of plaintiff's termination, and was named as a defendant. The Marshal's return shows service by delivery to his wife at his residence or usual place of abode on October 6, 1978. He filed no answer and no one appeared on his behalf at any time before the entry of summary judgment on the motions of the Secretary of Labor and the other defendants who had been served and appeared. An answer was filed on his behalf by the Jersey City Corporation Counsel on October 30, 1980.

Plaintiff had also named Thomas F.X. Smith as a defendant. Mr. Smith took office as Mayor of Jersey City well after the date of plaintiff's termination. The proofs on file at the time summary judgment was granted showed no issue at all, let alone a genuine issue, that he had no connection whatever with the City at the time of plaintiff's termination. He was included in the Answer filed for other City defendants, and in their motion for summary judgment.

Before Mr. Jordan's answer was filed on October 30, 1980, several events had occurred. After review of the file, it appeared from the Marshal's return that a City defendant (Spangenberg) and a num-

ber of Union defendants had never been served. Since plaintiff's attorney receives a copy of the Marshal's return, this failure of service had to have been known from shortly after the returns were made, yet nothing had been done to secure alias summonses and effectuate service for a protracted period. The clerk accordingly issued a Notice of Call for Dismissal for lack of prosecution under General Rule 30 of this District, as to defendants who had not been served at all, and also as to Mayor Jordan who had been served, had then not answered, and as to whom no action had been taken by plaintiff. The Clerk's Notice of Call was issued September 3, 1980, returnable September 22, 1980.

On September 11, 1980, the clerk docketed a motion by plaintiff, returnable October 14, 1980 for an order permitting substitute service by mail on the defendants Thomas DeCarlo and Local 245 of the Jersey City Public Employees Union, as well as for the entry of default against Mayor Jordan. That motion, as well as the Clerk's Notice of Call for Dismissal (which had been carried) were heard on October 14, 1980 and decision was reserved. Some two weeks later Mayor Jordan's answer was filed, as noted above.

Plaintiff's motion for an order to enter a default against Mayor Jordan must be denied. The matter is governed by F.R.Civ.P. 55(a), which briefly and simply provides that:

> "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default."

The recognized practice is equally simple and brief. A resident defendant served with summons and complaint is to serve his answer on the plaintiff, and file it with the clerk with proof of service, within 20 days after having been served with process. Service of the answer on plaintiff's attorney is an essential part of this pleading step. Plaintiff's attorney, of course, will know whether he has been served with a copy of a defendant's answer or not.

If he is not served with answer within 20 days after process service was effected, the plaintiff's attorney need only file with the clerk an affidavit, or certification in lieu of oath, under penalty of perjury, 28 U.S.C. § 1746, establishing that more than 20 days have elapsed since service of the summons and complaint, and that no answer has been served. Thereupon, routinely and as a matter of course, the clerk enters the default of that defendant *on the docket.* No motion is required and no order is involved.

After default has been entered, then the plaintiff may seek entry of *default judgment.* In a limited class of cases, the plaintiff submits papers to the clerk who proceeds to enter a default judgment under F.R.Civ.P. 55(b)(1).

In cases not covered by that provision, the application is made to the judge under F.R.Civ.P. 55(b)(2), who may act on the papers submitted, or call for the taking of testimony.

However, no default *judgment* may be entered under either F.R.Civ.P. 55(b)(1) or (b)(2) unless a *default* has previously been entered by the clerk under 55(a). Thus, the entry of default is an essential predicate to any default judgment.

In this case, although plaintiff's attorney was on notice for a lengthy period of the date of service on Mayor Jordan, and of the fact that he had not served answer, no affidavit or other proof has ever been filed with the clerk, and no default has ever been entered, pursuant to Rule 55(a). Nor can any default be entered now. It is too late to file an affidavit of default with the Clerk, because an answer on behalf of Mayor Jordan has been filed.

Finally, the record shows no fact indicating or even remotely suggesting that Mayor Jordan had any part at all in plaintiff's dismissal. The affidavits and exhibits show nothing more than that after plaintiff's dismissal he communicated with Mayor Jordan (evidently with copies to local newspapers) on the surgical procedures to complete the transsexual change which plaintiff hoped to

undergo. Mayor Jordan had the city physician communicate with a specialist in New York whose name and address plaintiff had provided, only to learn that the specialist was no longer with the clinic. Only general information was provided, and no diagnosis or evaluation of plaintiff. Mayor Jordan evidently tried to be helpful to plaintiff, and the effort was fruitless through no fault of Mayor Jordan.

Thus, nothing appears on which to ground any kind of claim against Mayor Jordan on account of plaintiff's termination, which was for insubordination.

For each and all of these reasons, this aspect of the motion is denied.

*Order allowing substitute service.*

■ The motion for this order seeks authority to serve defendants Thomas DeCarlo and Local 245 of the Jersey City Public Employees Union, by mail. Mr. DeCarlo is a Union defendant. The motion is denied for a number of reasons.

The first is that since the action is *in personam*, and not *in rem*, or *quasi in rem*, the preferred form of service is personal hand service. For Mr. DeCarlo, the method is set out in Rule 4(d)(1). For the Union, an unincorporated association, it is set out in Rule 4(d)(3).

The service attempted on Mr. DeCarlo was at the offices of Local 245, and he was not there. No service under Rule 4(d)(1) was attempted, either by providing instructions to the U.S. Marshal for that purpose, or by securing authority for service to be effected by a private process server under Rule 4(c). In this District, that authority is issued on request by the Clerk, since the U.S. Marshal's office is woefully understaffed and lacks manpower to effect prompt service in civil actions. Notice of the availability of authority through the Clerk's office has been publicised repeatedly to the Bar by notices published in the New Jersey Law Journal, designated as the official organ for such purposes by both this Court and by the Supreme Court of New Jersey.

Second, F.R.Civ.P. 4(e) allows service to be made under the circumstances and in the manner prescribed by statute or rule of court of the State in which the district court is held. N.J. Court Rule R.4:4–4(a) authorizes service by registered, certified or ordinary mail on individuals, and R. 4:4–4(c)(2) authorizes such service on unincorporated associations. Thus, from the time plaintiff's attorney learned from the Marshal's return that no service had been effected on Mr. DeCarlo or on Local 245, he could have obtained authority for private service, or could have effected mail service under the New Jersey court rules just cited, for which no order of any kind is required or appropriate. The authority to serve by mail flows from the rules themselves, and no order is called for.

Third, the Court of Appeals has examined the agreement between Local 245 and Jersey City, and has concluded (as does this court) that no provision in it imposes any duty relied on by the complaint. This ruling is the law of the case, and there is no interest to be served by bringing in two defendants at this late date against whom plaintiff has no claim.

Fourth, plaintiff's motion fails to mention still other defendants who were never served. Even now, if the motion could be granted, the case could not proceed against any defendant not served.

*The Clerk's Notice of Call for Dismissal Under Rule 30.*

■ When the notice of appeal was filed on May 24, 1979, Mayor Jordan had been served, had not answered, but no default had been entered; and other defendants had not been served at all.

In these circumstances, the orders of April 23, 1979 and May 1, 1979 which were appealed were orders adjudicating fewer than all the claims or liabilities as to fewer than all the parties, and not a final judgment unless the trial court makes an express determination that there is no just reason for delay, and expressly directs the entry of judgment, F.R.Civ.P. 54(b). No such express determination and express direction was made or given.

The failure to serve was observed by the Court of Appeals in its review of the file, though it did not note the service on Mayor Jordan and the absence of an answer on his behalf. Had it chosen to, it doubtless could have dismissed the appeal on that ground alone. It evidently chose to hear argument and decide the appeal because it may have had a heavy investment in time and effort of the panel and its staff when these items were discovered.

In any event, plaintiff's attention was expressly directed to the failure to serve from early 1980, nearly a year ago, when the opinion came down. More than 6 months elapsed thereafter without any action by plaintiff to effect service on the defendants never served. No explanation for this has been presented, or for the even longer delay from the time the Marshal's return was filed.

In the absence of any reasonable explanation for this protracted delay, even after the opinion on appeal mentioned the point, until after the Clerk's Notice of Call, the circumstances require that the Clerk's Notice of Call for dismissal be granted.